## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDY CACCIOLA | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | CASE NO.: 13-0381 |
| WORK N GEAR, LLC. | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Judy Cacciola ("Ms. Cacciola" or "Plaintiff"), by and through her undersigned

counsel hereby submits this Brief in Response to Defendant's Motion for Summary Judgment.


Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Jeremy M. Cerutti*
Jeremy M. Cerutti, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
Counsel for Plaintiff
215-639-0810

Date: February 26, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUDY CACCIOLA | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | CASE NO.: 13-0381 |
| WORK N GEAR, LLC. | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

Ms. Cacciola asserts that Defendant, her former employer, perpetuated a sexually hostile work environment and terminated her in retaliation for her complaints of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA").

Ms. Cacciola is a 55 year old female who has successfully worked in the retail industry for more than 20 years. Ms. Cacciola is the mother of three adult children and currently lives in Folcroft, Pennsylvania.

Ms. Cacciola was hired by Defendant in March of 2007 as a co-manager in Defendant's Glenolden, PA location. In 2008, Ms. Cacciola was promoted to store manager and continued to work in that position until her termination in September of 2011. During her employment, Ms. Cacciola performed her job well, developed good working relationships with her co-workers and customers, was promoted and received raises for her quality work.

Ms. Cacciola was supervised by Michael Hollitt, Defendant's Group Manager. During

2

the last year of her employment, she was subjected to offensive and inappropriate sexual remarks by Hollitt.  For example, Hollitt talked about sex in the presence of Ms. Cacciola, made jokes about other employees' sex lives and repeatedly told Ms. Cacciola that he was going to give her a "nipple twister."  Despite Ms. Cacciola's objection to Hollitt's conduct, it continued.  Ms. Cacciola concluded that the comments were disgusting and offensive and, as a result, she complained to Karen Berolini (in Defendant's Human Resources Department) about Hollitt's behavior.  In response to Ms. Cacciola's complaints of sexual harassment, Defendant did absolutely nothing.  Defendant failed to conduct any investigation whatsoever, did not discipline Mr. Hollitt and did not take any other action to remedy the harassment.  Once Hollitt learned of Ms. Cacciola's complaints, he began ignoring Ms. Cacciola and even called former employees of the store (including former assistant manager Jennifer Webster) as a means of threatening Ms. Cacciola.  Shortly after Ms. Cacciola's last complaint of sexual harassment, she was terminated.

Defendant's alleged reason for Ms. Cacciola's termination is that she failed to properly secure the store during a hurricane.  Ms. Cacciola, however, complied with Defendant's protocols but could not physically get to the store because of the hurricane.  Other members of management also failed to go to the store on the day of the hurricane but they were not terminated (or even disciplined).  Thus, the timing of events in this case coupled with Defendant's blatant disparate treatment of Ms. Cacciola compared to her peers demonstrates the pretextual nature of her termination.  As a result, Defendant's Motion for Summary Judgment must be denied.

## II.    STATEMENT OF FACTS

Ms. Cacciola hereby incorporates her Statement of Undisputed Facts as well as her response to Defendant's Statement of Facts.

3

## III.   LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations, and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). A genuine issue is established if a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

"[O]n summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." *Gelover v. Lockheed Martin*, 971 F.Supp. 180, 181 (E.D.Pa.1997).[1]

---

1 "In employment discrimination cases, the summary judgment standard is 'applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) *quoting Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this 'is clearly a factual question,' *Chipollini*, 814 F.2d at 899, summary judgment is in fact rarely appropriate in this

### B. Legal Argument

#### 1. Ms. Cacciola can establish that she was subjected to a sexually hostile work environment.

It is well established that "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult." *Meritor Savs. Bank FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

The analysis under Title VII and the PHRA are identical, as Pennsylvania courts have construed the protections of the two acts interchangeably. *Weston v. Pennsylvania Dep't of Corrections,* 251 F.3d 420, 426 n. 3 (3d Cir.2001) *see also Tomasso v. Boeing Co.,* 445 F.3d 702, 704 (3d Cir.2006) (applying the *McDonnell Douglas* framework to the plaintiff's PHRA claims); *Barbosa v. Tribune Co.,* 2003 U.S. Dist LEXIS 19483, at *11 (E.D.Pa. 2003).

An employer may be liable for discrimination under Title VII if an employee is subjected to a hostile work environment. A hostile work environment exists when the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 116 (2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).

The Third Circuit has held that to succeed on a claim for hostile work environment, a

---

type of case. Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' *Id. See Sempier,* 45 F.3d at 732-33 (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." *Marzano v. Computer Science Corp.,* 91 F.3d 497, 509-10 (3d Cir. 1996).

plaintiff must prove that: (1) the plaintiff suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in that position; and (5) the existence of respondeat superior liability. *Kunin v. Sears Roebuck and Co.,* 175 F.3d 289, 293 (3d Cir. 1999); *see also Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 276-77 (3d Cir. 2001).

In determining the existence of a hostile work environment, the totality of the circumstances must be examined. *Cardenas v. Massey,* 269 F.3d 251, 260 (3d Cir. 2001). "[T]he advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment." *Cardenas,* 269 F.3d at 261-62 (citing *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 148-49 (3d Cir.1999); *Aman,* 85 F.3d at 1081-84.

Although many of the cases considering hostile environment harassment claims involve a pattern of inappropriate conduct, there is no requirement that harassment occur more than one time in order to be actionable. *Cardenas,* 269 F.3d at 262. The standard contemplates conduct that is either severe or pervasive. *Id.* Although the conduct may be both, only one of the qualities must be proved in order to prevail. *Id.* Whether the conduct is so severe as to cause the environment to become hostile or abusive can be determined only by considering all the circumstances, and this determination is left to the trier of fact. *Id.*

A single action may be sufficient to support a hostile work environment claim if the act is "of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work." *Harris v. SmithKline Beecham,* 27 F.Supp.2d

569, 578 (E.D.Pa.1998). Generally, however, a plaintiff must show that he was subjected to " 'repeated, if not persistent acts of harassment.' " *Id.* (quoting *Bedford v. Southeastern Pennsylvania Transp. Auth.,* 867 F.Supp. 288, 297 (E.D.Pa.1994)).

In determining whether a work environment is objectively hostile, courts are not to examine the scenario on an incident-by-incident basis, but instead must consider the totality of the circumstances. *Andrews,* 895 F.2d at 1485; *Stair v. Lehigh Valley Carpenters Local Union No. 600,* 813 F.Supp. 1116, 1119 (E.D.Pa.1993). An objectively hostile work environment can arise, for instance, from the frequent use of insulting and derogatory language relating to women. *See Andrews,* 895 F.2d at 1485-86 (quoting *Bennett v. Corroon & Black Corp.,* 845 F.2d 104, 106 (5th Cir.1988)).

"Because a hostile work environment claim is a single cause of action, rather than a sum of discrete claims, each to be judged independently, the focus is the work atmosphere as a whole." *West v. Phila. Elec. Co.,* 45 F.3d 744, 757 (3d Cir. 1995) (quoting *Hansel v. Public Service Co.,* 813 F.Supp. 1126, 1132 (D.Colo.1991)). "A hostile work environment is like a disease. It can have many symptoms, some of which change over time, but all of which stem from the same root." *Hansel v. Public Service Co.,* 813 F.Supp. 1126, 1132 (D.Colo.1991).

### a. Ms. Cacciola was subjected to discriminatory comments and treatment because of her sex.

A plaintiff need not have direct evidence of the harasser's motivation for discrimination against her. *Abramson v. William Paterson College*, 260 F.3d 265, 2001 U.S. App. LEXIS 17614, 86 Fair Empl. Prac. Cas. (BNA) 668, 81 Empl. Prac. Dec. (CCH) P40,678 (3d Cir. N.J. 2001). The fact-finder is not required "to peer inside the harasser's mind," but rather, proving the harasser's motivation may be done by showing that the "offender's behavior was ... based on a

7

protected category." *Id.* Because "discrimination is often masked in more subtle forms, it is often difficult to discern discriminatory animus" and "with respect to certain conduct, the intent to discriminate can be inferred." *Id.*

As the Third Circuit has stated in the context of harassment, "there are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1996 U.S. App. LEXIS 12551, 70 Fair Empl. Prac. Cas. (BNA) 1614, 68 Empl. Prac. Dec. (CCH) P44,254, 156 A.L.R. Fed. 699 (3d Cir. N.J. 1996). "The words themselves," noted the court, "are only relevant for what they reveal-the intent of the speaker." *Id.*

As such, "it is improper to parse through the plaintiff's evidence in search of a link between the harasser's conduct and a discriminatory animus in his or her mind." *Mufti v. Aarsand & Co.,* 667 F. Supp. 2d 535, 545 2009 U.S. Dist. LEXIS 98354 (W.D. Pa. 2009). Instead, "[t]he proper inquiry at this stage [is ascertaining] whether a reasonable factfinder could view the evidence as showing that [the plaintiff's] treatment was attributable to her [sex]." *Abramson,* 260 F.3d at 277. Stated differently, "the intent to discriminate can be inferred from the entire context and the conduct of the actors involved." *Mufti,* 667 F. Supp. 2d at 545. *Lucas v. City of Philadelphia*, 2013 U.S. Dist. LEXIS 70689, 34-35, 2013 WL 2156007 (E.D. Pa. 2013, Buckwalter, J.)

Sexual harassment in particular can take different forms, both overtly sexual and facially neutral. ***The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course.*** A more fact intensive analysis will be necessary where the actions are not sexual by their very nature." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588

(M.D.Pa 2002) (quoting A*ndrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n. 3 (3d Cir.1990)). "To constitute impermissible discrimination, the offensive conduct is not necessarily required to include sexual overtones in every instance ...." *Id.* at 1485. "All that is required is a showing that [gender] is a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir.1996); *see also Cardenas,* 269 F.3d at 261; *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 148 (3d Cir.1999).

Intentional discrimination is implicit in cases involving "sexual propositions, innuendo, pornographic materials, or ***sexual derogatory language***." *Andrews*, 895 F.2d at 1482. In these cases, discrimination should be recognized as a matter of course. *Andrews,* 895 F.2d at 1482 [emphasis added]; *Hartman v. Sterling, Inc.,* 2003 U.S. Dist. LEXIS 18140, 12-13, 2003 WL 22358548 (E.D. Pa. 2003).

Sexual harassment need not be motivated by sexual desire or "include sexual overtones in every instance." *Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 2010 U.S. Dist. LEXIS 42462, 93 Empl. Prac. Dec. (CCH) P43,875 (E.D. Pa. 2010, Goldberg, J.) citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir. 1990); *See Seybert v. International Group, Inc.,* 2009 U.S. Dist. LEXIS 21543, 2009 WL 722291 (E.D.Pa 2009) (plaintiff presented sufficient evidence to support the allegation that the harassment was because of gender where plaintiff alleged three incidents that contained overt sexual overtones - two where he stared at her breasts and one where he directed a sexual comment at her - along with incidents that were, on their face, non-discriminatory but still contributed to an overall sexually hostile environment).

9

"[I]ntimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual advances." *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1988)). *See also Anderson v. Deluxe Homes of Pa., Inc.*, 131 F. Supp. 2d 637, 644 (M.D. Pa. 2001) ("Sexual harassment can take different forms, both sexual and non-sexual."). *Flick v. Aurora Equip. Co.*, 2004 U.S. Dist. LEXIS 1171, 16, 2004 WL 220859 (E.D. Pa. Jan. 13, 2004, Surrick, J.).

Ms. Cacciola was subjected to overtly sexual remarks throughout the last year of her employment with Defendant. Specifically, she was told by Michael Hollitt (Group Manager) at least 100 times during the last year of her employment (and on a weekly basis during telephone conversation with him) that he was going to give her a "nipple twister." In addition, within less than two months prior to her termination, she was subjected to a conversation between Hollitt and George Edelman (Assistant Manager) whereby Hollitt asked Edelman when the last time he had sex was and Edelman responded by saying, "last week and I didn't have to pay for it." Such comments are blatantly sexual and should therefore be considered discrimination based on sex.[2]

### b. Defendant's conduct was severe or pervasive

Plaintiff must also point to evidence that the harassment was severe, or pervasive and regular discrimination. *Harris v. Forklift Sys.*, 510 U.S. 17, 114 S. Ct. 367, 126 L. Ed. 2d 295, 1993 U.S. LEXIS 7155, 62 U.S.L.W. 4004, 63 Fair Empl. Prac. Cas. (BNA) 225 (U.S. 1993).

To prove this element, plaintiff must show that her workplace was "permeated with

---

[2] Defendant's reliance on *Toth* is misplaced and its assertion that homosexuals are incapable of making comments of a sexual nature to heterosexuals is ridiculous. In addition, Defendant's reliance on *Fogleman* and *Bibby* are inapplicable as this case does not involve same-sex sexual harassment. *"Harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.* Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998); see Collins v. TRL, Inc., 263 F. Supp. 2d 913, 918, 2003 U.S. Dist. LEXIS 8388, 10-11, 91 Fair Empl. Prac. Cas. (BNA) 1704 (M.D. Pa. 2003). Defendant, in essence, asks this Court to hold that a homosexual male can never sexually harass a heterosexual female. Such a holding would completely undermine existing jurisprudence as set forth above.

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21-23 (citations omitted).   "The disjunctive phrasing means that 'severity' and 'pervasiveness' are alterative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the work place only if it is pervasive." *Jensen v. Potter,* 435 F.3d 444, 449 n. 3 (3d Cir. 2006) (citing Sullivan, Employment Discrimination); *Rorrer*, 712 F. Supp. 2d at 428.  The standard contemplates conduct that is either severe or pervasive. *Watkins v. Nabisco Biscuit Co.*, 224 F. Supp. 2d 852, 2002 U.S. Dist. LEXIS 19866 (D.N.J. 2002).  Although the conduct may be both, only one of the qualities must be proved in order to prevail. *Id.*

Therefore, a single incident of severe harassment in the workplace may contaminate the work place to such a high degree that it will be considered hostile. *Id.*; *see also Johnson v. Lancaster -Lebanon Intermediate Unit* 13, 2012 U.S. Dist. LEXIS 172324, 27 Am. Disabilities Cas. (BNA) 612 (E.D. Pa. 2012, Goldberg, J.).

Where harassment is not severe, incidents of harassment must occur either in concert or with regularity. *Andrews*, 895 F.2d at 1484.  When examining these standards, courts are to "look[] at all the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance." *Harris*, 510 U.S. at 23.  "Incidents involving employees other than the plaintiff are also relevant in establishing generally hostile work environment." *Velez v. QVC*, 227 F.Supp.2d 384, 410 (E.D. Pa. 2002, Robreno, J.).

As noted by the Tenth Circuit in *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999), "the severity and pervasiveness evaluation is particularly unsuited for summary

11

judgment because it is "quintessentially a question of fact." *Id*; *see also* Rorrer, 712 F. Supp. 2d at 429; *Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 2012 U.S. Dist. LEXIS 128765, 2012 WL 3990834, at *7 (M.D. Pa. 2012); *Lucas v. City of Philadelphia*, 2013 U.S. Dist. LEXIS 70689, 41-43, 2013 WL 2156007 (E.D. Pa. 2013, Buckwalter, J.).

Title VII applies to both facially neutral mistreatment and overt discrimination, which in sum constitute the hostile work environment. *Cardenas*, 269 F.3d at 261 (discussing the obligation of the courts to be "increasingly vigilant" against subtle forms of discrimination, and the importance of allowing plaintiffs to prove discrimination indirectly). As our Court of Appeals has emphasized, "the advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim." *Id.* at 261-62.

Overt sexual harassment is not necessary to establish a sexually hostile environment and each individual incident need not be sufficiently severe to detrimentally affect a female employee. *Andrews* 895 F.2d at 1485; *Smith v. Pathmark Stores*, 1998 U.S. Dist. LEXIS 8631, 13, 1998 WL 309916 (E.D. Pa. June 11, 1998, Buckwalter) (concluding that that a fact finder could reasonably conclude that defendant's comments to plaintiff that they should "get naked," that she "needs a man" and other conduct was pervasive and/or regular and that, as a result, plaintiff has established a genuine issue of material fact as to whether defendant created a hostile work environment).

To evaluate whether harassment was severe or pervasive, a court must consider the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

12

interferes with an employee's work performance." *Harris,* 510 U.S. at 23; *See E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.,* 2007 WL 1258132, *1 (E.D.Pa.2007); *See Seybert v. The International Group, Inc.,* 2009 WL 7222291, *19 (E.D. Pa 2009).

Harassment can rise to a severe or pervasive level even if it does not create a "tangible effect[]" that affects an employee's performance, because "no single factor is required" before a jury can find that a hostile work environment exists. *Harris,* 510 U.S. at 22-23; *Corica v. Phila. Mental Health Care Corp.,* 2012 U.S. Dist. LEXIS 147716, 12, 116 Fair Empl. Prac. Cas. (BNA) 738 (E.D. Pa. 2012, Pratter, J.)

In a hostile work environment case, "[a] [p]laintiff's deposition testimony is sufficient to show the existence of a material factual issue for trial." *Wallace v. United Parcel Serv.,* No. Civ.A.02-1685, 2006 U.S. Dist. LEXIS 44385, 2006 WL 1806404, at *6 (D.N.J. June 29, 2006), aff'd, Fed. Appx. , 2007 U.S. App. LEXIS 24155, 2007 WL 2988582 (3d Cir. 2007).

The treatment and comments to which Ms. Cacciola was subjected certainly rise to the level of severe or pervasive conduct. First, Ms. Cacciola's manager repeatedly told her he was going to give her a "nipple twister" throughout her last year of employment. He also subjected her to comments between him and an assistant manager about sex. After Ms. Cacciola complained about the harassment, Hollitt called former employees (including Ms. Cacciola's neighbor and friend Jennifer Webster), asked her about Ms. Cacciola's accusations and told her (Ms. Webster) that Ms. Cacciola had been fired from her previous jobs (from which an inference can be drawn that he was attempting to discredit Ms. Cacciola's reputation and/or imply that Defendant would also fire her if she kept complaining about him). Such comments and conduct occurred with regularity (every single week for one year), were disgusting, offensive, physically threatening and humiliating. The fact that he repeated this comment to Ms. Cacciola almost

every time he "signed off" on a telephone call with her (a few times per week over a 52-week period) is persuasive evidence that his harassment of her was pervasive.

### c. Ms. Cacciola subjectively perceived the work environment to be hostile.

A Plaintiff must also find the harassment to be abusive. "[I]f the [harassment] victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22. Implicit in this prong is that the harassment must be unwelcome to the plaintiff. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Actual economic harm, however, is not a prerequisite to an employee's job conditions being altered in violation of Title VII. *Harris*, 510 U.S. at 21.

"A plaintiff's testimony that she was offended, coupled with her actions indicating that she disapproved, together are sufficient to fulfill the subjective element of a *prima facie* case of hostile working environment sexual harassment at the summary judgment stage." *Bogoly v. Easton Pub. Co.*, *3 2001 WL 34368920 (E.D.Pa. 2001, Van Antwerpen, J.).

In this case, the evidence clearly demonstrates that Ms. Cacciola subjectively perceived the work environment to be hostile. Each time Ms. Cacciola was subjected to the "nipple twister" comment, she either told Hollitt that he was disgusting or immediately hung up the phone. In addition, Ms. Cacciola repeatedly testified under oath that the comments were offensive, disgusting, that she felt like he was going to "come through the phone" and that she did not think he was joking. When pressed about her perception of the conduct, Ms. Cacciola testified that the comments made her feel "uncomfortable," "disgusting," and that she felt like Hollitt was going to "grab at [her]". Ms. Cacciola also testified that she complained about the

conduct to Ms. Tramo (her co-worker), Ms. Webster (her neighbor and former co-worker) and Ms. Berolini (Defendant's Human Resources Manager).  Taken together, Ms. Cacciola's conduct more than sufficiently establishes that she subjectively perceived the environment to be hostile.

### d.  Ms. Cacciola's work environment was objectively hostile.

"In determining whether the fourth prong, the objective test, is met, we must look at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Abramson,* 260 F.3d at 280 (quoting *Harris,* 510 U.S. at 23)(internal quotation marks omitted).

Conduct can be actionable as harassment creating a sexually hostile work environment, even though it does not affect seriously an employee's well-being or lead the employee to suffer injury.  *Harris,* 114 S. Ct. at 370; *See Spain,* 26 F.3d 439 at 450 (finding that where plaintiff was allegedly subjected to sexual rumors and co-worker ostracization, "there is a fact question whether a reasonable person in [plaintiff's] position would have been affected detrimentally by the environment she faced").

As set forth at length under the "severe or pervasive" prong, the conduct to which Ms. Cacciola was subjected was frequent, offensive, physically threatening and humiliating and thus objectively hostile.

### e.  Defendant is vicariously liable for the hostile work environment.

The final element to be met in a successful Title VII claim for hostile work environment is respondeat superior liability.  An employer is generally liable for the acts of a supervisory employee or its employees' harassment of a subordinate when their actions have created a hostile work environment.  *Faragher v. City of Boca Raton,* 118 S.Ct. 2275 (1998); *see also Burlington*

*Industries, Inc. v. Ellerth*, 118 S.Ct. 2257 (1998); *Clegg v. Falcon Plastics, Inc.*, 174 Fed.Appx 18, 26 (3d Cir. 2006).

Under Title VII, an employer's liability for workplace harassment may depend on the status of the harasser. *Vance v. Ball State Univ.,* 133 S. Ct. 2434, 2437, 186 L. Ed. 2d 565, 574-575, 2013 U.S. LEXIS 4703, 1-2, 81 U.S.L.W. 4553, 118 Fair Empl. Prac. Cas. (BNA) 1481, 97 Empl. Prac. Dec. (CCH) P44,852, 24 Fla. L. Weekly Fed. S 385, 2013 WL 3155228 (U.S. 2013). If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action (i.e., "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," *Id,* citing *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633), the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Id, citing Faragher v. Boca Raton,* 524 U.S. 775, 807, 118 S. Ct. 2275, 141 L. Ed. 2d 662; *Ellerth, supra,* at 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633.

"An employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance* 133 S. Ct. at 2439.

In *Vance*, both parties agreed that the alleged harasser did not have any authority to hire,

16

fire, discipline, promote or transfer the plaintiff.  As a result, the Court concluded that Saundra Davis (the alleged harasser) was not a "supervisor" for purposes of vicarious liability under Title VII.  *Id.*  In this case, however, there is a genuine factual dispute regarding whether Michael Hollitt, Defendant's Group Manager, was Ms. Cacciola's "supervisor" for Title VII vicarious liability purposes.  For example, although Hollitt predictably denied having authority to hire, fire or discipline Ms. Cacciola, the record contains detailed testimony from Eileen Siner (Regional Manager and Hollitt's boss) which demonstrates that Hollitt did have authority to make hiring, firing and disciplinary decisions regarding Ms. Cacciola.  Ms. Cacciola's Statement of Facts No. 13-18 reflect that Hollitt was empowered by Defendant to take tangible employment actions against her, including recommending hiring and firing, making disciplinary decisions, preparing and issuing performance evaluations and ensuring that the she was completing her tasks (as contemplated by *Vance*).

Ms. Cacciola also testified that Hollitt issued her performance evaluations and determined whether she would receive a raise.  *See* APX p.0024 (Plaintiff's Deposition at p. 52:4-7).  When giving testimony regarding a March 2011 performance evaluation form given to her by Hollitt, Ms. Cacciola testified that "Mike told me to hurry up and sign it if I wanted a raise, because he was putting the raises in.  So there was your answer to that other question, he was responsible for raises."  APX p.0028 (Plaintiff's deposition at p. 67:22-24; 68:1-2).

As a result of these disputed facts, a reasonable juror could conclude that Hollitt was empowered by Defendant to take tangible employment actions against Ms. Cacciola and was therefore a "supervisor" for purposes of imputing vicarious liability to Defendant for her termination.  Thus, Ms. Cacciola has established all of the elements of her hostile work environment claim.

17

But even if Hollitt is not considered a "supervisor" for purposes of imputing liability to Defendant (which he should be), Ms. Cacciola can still demonstrate that Defendant acted negligently in failing to remedy the harassment because Defendant knew or should have known of the harassment and failed to take prompt remedial action (or any action at all).

An employer "knew or should have known" if "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment." Employers have constructive notice when "an employee provides management level personnel with enough information to raise the probability of sexual harassment in the mind of a reasonable employer." *Huston* 568 F.3d at 105 (citing *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999)).

In this case, Ms. Cacciola complained to Ms. Berolini (Defendant's Human Resources Manager) multiple times about Hollitt. Specifically, between April and July 2011, she complained at least six times to Berolini about Hollitt's sexual harassment. *See* Plaintiff's Statement of Fact at ¶50. During the telephone calls and messages to Berolini, Ms. Cacciola recounted a specific sexual conversation that occurred between Hollitt and Edelman (an Assistant Manager), and told her that Hollitt was making "disgusting" comments to her. In response, Berolini told Ms. Cacciola, "Judy, that's sexual harassment." *Id.* at ¶51-55. Ms. Cacciola was initially afraid to pursue the matter for fear of retaliation. But, on the very day of her termination, Ms. Cacciola called Berolini and informed her (via voice-mail message) that she was sick of Hollitt's conduct and that she wanted to press charges against him. *Id.* at ¶68. Based on this evidence, any jury could infer that Defendant knew of should have known of the sexual harassment. There mere fact that Berolini stated to Ms. Cacciola, "Judy, that's sexual harassment," demonstrates Defendant's actual and/or constructive knowledge of the sexual harassment.

18

Furthermore, the fact that Ms. Cacciola recounted a specific sexual conversation she witnessed in combination with telling Berolini that Hollitt was saying "disgusting" things to her is more than sufficient evidence to demonstrate that she provided management "with enough information to raise the probability of sexual harassment in the mind of a reasonable employer."[3] *See Kunin, supra.*

In response to Ms. Cacciola's complaints, ***Defendant took absolutely no action.*** Defendant failed to investigate, speak with Ms. Cacciola regarding her complaints, interview Hollitt or anyone else, make any findings, discipline or terminate Hollitt, change his position, work location or even send him for sexual harassment training. See Plaintiff's Statement of Facts at ¶70-71. Instead, Defendant took no action whatsoever.[4]

Thus, Ms. Cacciola took advantage of Defendant's complaint procedure and Defendant failed to take any remedial action. As a result, Defendant acted negligently in addressing the sexual harassment and in doing so, perpetuated the sexually hostile work environment.

Defendant, knowing that it failed to take any remedial action whatsoever, looks to the holding in the *Torres* case (116 F.3d 625 (2nd Cir. 1997) to attempt to excuse its negligence. But, as the *Torres* case specifically stated, the determination of whether a supervisor breaches its duty by honoring an employee's request not to take action will vary from case to case. And, despite this scenario, "[a]n employer's conduct of an investigation and determination of its scope must be viewed ex ante and take into account that, from the employer's viewpoint, worst-case

---

3 Even Ms. Cacciola's testimony that she left a voice-mail message for Berolini on the day of her termination informing Berolini that she wanted to press charges against Hollitt is sufficient evidence from which a jury could infer that Defendant had actual or constructive knowledge of the harassment (especially in light of the fact that just weeks prior Berolini acknowledged that Ms. Cacciola was being sexually harassed).

4 Defendant's Motion goes to length to assert that Defendant's complete and utter failure to act was only the result of Ms. Cacciola's ambivalence about proceeding with formal charges against Hollitt. But Defendant cannot ignore that on the day of her termination, Ms. Cacciola informed Berolini that she was prepared to pursue formal charges against Hollitt. In response to that request, Defendant also did nothing.

scenarios must govern its conduct. *Malik v. Carrier Corp.*, 202 F.3d 97, 107, 2000 U.S. App. LEXIS 960, 26, 81 Fair Empl. Prac. Cas. (BNA) 1275, 140 Lab. Cas. (CCH) P58,855, 77 Empl. Prac. Dec. (CCH) P46,245, 15 I.E.R. Cas. (BNA) 1551 (2d Cir. Conn. 2000).

In addition, "an employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking[] under federal law" but instead an "affirmative duty." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 21, 2003 U.S. App. LEXIS 13440, 13-14, 172 L.R.R.M. 3041, 148 Lab. Cas. (CCH) P59,761 (1st Cir. Mass. 2003); *Malik,* 202 F.3d at 105 (*citing Faragher v. City of Boca Raton,* 524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998)). To the contrary, federal law exerts considerable pressure on employers to make certain that employees refrain from sexually harassing conduct. *See id.* at 106; see also *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) (explaining that "Title VII is designed to encourage the creation of antiharassment policies and effective [complaint] mechanisms" for reporting harassing conduct).

As stated clearly in *Malik, supra,* "[a]n employer must consider not only the behavior of the alleged offender, but also the response, if any, of its managers. ***Nor is the company's duty to investigate subordinated to the victim's desire to let the matter drop. Prudent employers will compel harassing employees to cease all such conduct and will not, even at a victim's request, tolerate inappropriate conduct that may, if not halted immediately, create a hostile environment."*** *Malik,* 202 F.3d at 106; *Perugini v. Stryker Orthopaedics*, 2007 U.S. Dist. LEXIS 12700, 34, 100 Fair Empl. Prac. Cas. (BNA) 678 (D. Conn. Feb. 22, 2007).

Unlike in *Torres*, Ms. Cacciola never asked Berolini to keep the matter "confidential." Instead, after Ms. Cacciola's second report of harassment, when Berolini asked her whether she wanted her to take action, Ms. Cacciola said, "I'm not sure."   After reporting the sexual conversation between Hollitt and Edelman to Berolini again, Ms. Cacciola told Berolini that she was "scared" for Berolini to report on that particular date. APX p. 0040 (Plaintiff's Deposition at p. 114:1-9).   Despite Ms. Cacciola's reservations, she called Berolini on September 6, 2011 and left her a voice-mail message, informing her that she wanted to proceed with pressing charges against Hollitt.   In response, Defendant took no action (except to fire Ms. Cacciola a few hours later).

As a result of Ms. Cacciola's reports of sexual harassment and despite her expressed fears to Berolini, Defendant had a legal obligation to take some action, conduct an investigate and/or otherwise attempt to remedy the situation. *See Mailk and Perugini, supra; See also Gallagher v. Delaney*, 139 F.3d 338, 348-349, 1998 U.S. App. LEXIS 5056, 25-27, 76 Fair Empl. Prac. Cas. (BNA) 700 (2d Cir. N.Y. 1998)(explaining that "[t]his is a catch-22 situation. If an alleged victim of sexual harassment asks a person of authority to whom she has reported the harassment to keep it confidential, and the employer attempts to reduce the emotional trauma on the victim by honoring her request, it risks liability for not quickly and effectively remedying the situation. [But] [i]n evaluating the situation, a reasonable jury might hypothesize that it requires substantial emotional strength for a harassment victim to overcome the embarrassment and intimidation engendered by the abuse, report the harassment endured, and face becoming the subject of office schadenfreude. Cf. Michele Ingrassia, Abused and Confused, Newsweek, Oct. 25, 1993 at 58 (only 26% of women who say that they have been harassed report such harassment). Too narrow a view of what is appropriate in reacting to an employee's conflicting needs for protection and

21

for privacy may inhibit well-founded, valid complaints; too broad a view may unreasonably expand employers' duties beyond what Title VII requires and lead to unpleasantly gelid work environments"). Defendant did not do so.

Since Ms. Cacciola has more than sufficiently established her hostile work environment claim, Defendant's Motion regarding this claim must be denied.

### 2. Ms. Cacciola can establish that she was terminated in retaliation for complaining about sexual harassment.

#### a. Ms. Cacciola engaged in protected activity.

It is well established that making **even verbal complaints** to management about activities prohibited by Title VII (or other anti-discrimination statutes) constitute protected activity. *See e.g. Baker-Bey v. Pennsylvania Dept. of Corrections*, WL 2856397 (E.D. Pa. 2008)(verbal complaints to management are protected activity); *See also Burton v. Pennsylvania Board of Probation and Parole,* No. 02-2573, 2002 WL 1332808, at * 5 (E.D.Pa. June 13, 2002); *Abramson v. William Paterson Coll. of New Jersey,* 260 F.3d 265, 288 (3d Cir.2001)); *Sgro v. Bloomberg L.P.*, 331 Fed.Appx. 932, (3d Cir. 2009)(verbal complaint that did not mention discrimination but likened plaintiff to another older employee who was disfavored in lieu of younger employee constituted protected activity); *Seybert v. International Group*, Inc., WL 722291 (E.D. Pa. 2009)(employees statement to manager that she felt uncomfortable when he stared at her breasts engaged in protected activity).

Ms. Cacciola complained to Berolini that Hollitt was making "disgusting" comments to her, she recounted a detailed conversation to Berolini whereby Hollitt and Edelman were talking about sex in the workplace and eventually told Berolini that she wanted to press charges against Hollitt. In response to one of Ms. Cacciola's complaints, Berolini told Ms. Cacciola that Hollitt's

conduct was "sexual harassment." Thus, Ms. Cacciola engaged in protected activity.

### b. Ms. Cacciola suffered an adverse employment action.

It is undisputed that Ms. Cacciola was terminated from employment on September 6, 2011.

### c. Ms. Cacciola can establish a causal link between her protected activity and her termination via timing and ongoing antagonism.

A causal connection can be demonstrated through direct evidence or circumstantial evidence. *See Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992). Some plaintiffs establish causation with (1) temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) by showing that the reason for his or her alleged adverse action is pretextual. *Id.*

In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity.[5] *See Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005) (reversing district court grant of summary judgment because court failed to consider inference created by adverse action within less than three months following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc.,* WL 703395 (W.D. Pa. 2009)(less than 3 months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir.2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to

---

5 *See Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993) (temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive."). *See also Burrus v. United Tel. Co. of Kan., Inc.,* 683 F.2d 339, 343 (10th Cir. 1982) (A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."). *See also Nesselrotte v. Allegheny Energy, Inc.,* WL 703395 (W.D. Pa. 2009) (less than three months between protected activity and termination sufficiently established causation element); *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1240 (10th Cir. 2004) (concluding that a period of two to three months between the protected activity and the alleged retaliatory action was sufficient to establish causation); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment).

establish causation); *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987)(holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment); *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); *Richard v. Cingular Wireless LLC,* 233 Fed.Appx. 334, 338 (5th Cir.2007) (concluding that two and one half months is a short enough time period to support an inference of a causal link); *King v. Rumsfeld, 328 F.3d 145* (4th Cir. 2003)(2.5 months held to establish a *prima facie* case of retaliation).

In this case, Ms. Cacciola can prove the causal link element of her retaliation claim via timing, ongoing antagonism and pretext (as outlined below). First, Ms. Cacciola testified that she made several complaints of sexual harassment to Berolini in June and July of 2011. She was terminated on September 6, 2011, less than two months after her last complaint of sexual harassment. In addition, she testified that she made one final complaint of sexual harassment on the *very day* of her termination. Thus, the timing of events in this case, in and of itself, raises an inference of retaliation.

In addition to the suspicious timing, Ms. Cacciola can also point to evidence of ongoing antagonism between the dates of her complaints and her termination. After her complaints to Berolini, Ms. Cacciola was questioned by Edelman about whether she was going to press charges against Hollitt for sexually harassing her. She was also subjected to Hollitt calling Jennifer Webster (Ms. Cacciola's friend and neighbor) immediately after her complaints to Berolini and inquiring into whether he ever made sexual remarks in the workplace. During this call, Hollitt also told Webster that Ms. Cacciola had been terminated from previous jobs (which Ms. Cacciola asserts is not true). From such conduct, a jury could certainly infer that Hollitt was attempting to

24

further harass and/or antagonize Ms. Cacciola.

### d. Ms. Cacciola can establish that Defendant's proffered reason for her termination is pretextual.

To defeat summary judgment when the defendant answers the plaintiff's *prima facie case* with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably ***either*** (1) disbelieve the employer's articulated legitimate reasons; ***or*** (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative factor of the employer's action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *see also Woodson,* 109 F.3d at 920 n. 2; *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Jalil,* 873 F.2d at 708.

A plaintiff can establish pretext by illustrating that a defendant's proffered reasons for the adverse employment actions are contradicted or inconsistent. *Zelinski v. Pennsylvania State Police,* 108 Fed. Appx. 700, 707 (3d Cir.2004). "To discredit the employer's proffered reason ... the nonmoving plaintiff must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act of the asserted non-discriminatory reasons." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d. Cir. 1994)).

The Third Circuit Court of Appeals and corresponding jurisprudence has confirmed that the Supreme Court's elimination of mixed-motive claims by creating a "but-for causation" analysis does not impact a court's summary judgment analysis. In *Johnson v. Del. County Juvenile Det. Ctr.,* 2013 U.S. App. LEXIS 23743 at * 10 (3d Cir. Pa. 2013), the Third Circuit

Court of Appeals explained that the "but for" causation analysis **does not modify the typical burden-shifting analysis *for purposes of summary judgment.*** In reversing a grant of summary judgment, the Court in *Johnson* explained that the employer-defendant's argument that a plaintiff must demonstrate "but for" causation at the summary judgment **is "misplaced," clarifying that discrimination claims based upon a pretext theory are not impacted by *Gross's* holding, as it was only intended to eliminate mixed-motive claims.** *Id.* (emphasis added). *See also Mehta v. Fairleigh Dickinson Univ.*, 530 Fed. Appx. 191, 2013 U.S. App. LEXIS 14599 (3d Cir. N.J. 2013)(reversing grant of summary judgment on age discrimination claim explaining that but for causation ***only precluded a mixed motive claim*** and the plaintiff presented sufficient evidence to proceed to trial under the standard and well-known McDonnell Douglas burden shifting analysis.); *Ion v. Chevron USA, Inc.*, 731 F.3d 379 (5th Cir. 2013)("The Supreme Court's recent decisions in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013), and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009), ***have limited the applicability of the mixed-motive framework*** in cases involving Title VII and the Age Discrimination in Employment Act.")(emphasis added); *Fowler v. Borough of Dallas*, 2009 U.S. Dist. LEXIS 90341, at fn 14 (M.D. Pa. 2009)(the court specifically explained that the holding in Gross "does not alter plaintiff's burden at the summary judgment stage.").

In other words, Ms. Cacciola is not required to prove, at this stage, that she was terminated because of her complaints of discrimination (a burden she bears at trial). But rather, at this stage of the litigation, she is obligated to adduce sufficient evidence to cast doubt on Defendant's proffered reasons for her termination, such that a reasonable fact finder may disbelieve Defendant.

Antagonism, disparate treatment, temporal proximity, inconsistencies and other evidence can be sufficient to avoid summary judgment independently or collectively. *See e.g. Rumanek v. Indep. Sch. Mgmt.*, 2014 U.S. Dist. LEXIS 3091 (D. Del. 2014)(denying summary judgment on Title VII retaliation claim explaining that temporal proximity and inconsistencies will continue to establish causation in a circumstantial evidence case post-*Nassar*); *Crawford v. George & Lynch, Inc.*, 2013 U.S. Dist. LEXIS 174892 (D. Del. 2013)(denying summary judgment on Title VII retaliation claim explaining that antagonism and/or temporal proximity will still suffice to establish but-for causation post-*Nassar*); *Reaves v. Pa. State Police*, 2014 U.S. Dist. LEXIS 14819, at ** 10-11 (M.D. Pa. 2014)(granting summary judgment to a defendant because of dearth of evidence but explaining that post-*Nassar*, courts still consider temporal proximity, antagonism, and the evidence as a whole in determining causation at the summary judgment stage in a circumstantial evidence case); *Amos v. McNairy County*, 2014 U.S. Dist. LEXIS 9935 (W.D. Tenn. 2014)(denying summary judgment and explaining that timing or evidence as a whole is sufficient to establish the *prima facie* element of causation); *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546 (8th Cir. 2013)(temporal proximity and evidence of antagonism supported jury verdict in Title VII retaliation case under *Nassar* but-for standard); *Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 Fed. Appx. 685, 695 (6th Cir. 2013)(reversing grant of summary judgment in Title VII retaliation case explaining that post-*Nassar* evidence that may infer retaliation such as temporal proximity and negative comments to employee will suffice to still establish causation element and stating further that the *prima facie* case is still intended to create a minimal burden upon the plaintiff); *Sabrina Sims v. District of Columbia*, U.S. Dist. LEXIS 15181, at * 23 (D. D.C. 2014)(evidence of temporal proximity was enough to establish a question of fact as to multiple alleged acts of retaliation post-*Nassar*); *Baker v. Becton,*

*Dickinson & Co.*, 532 Fed. Appx. 601 (6th Cir. 2013)(In reversing a grant of summary judgment, the court explained that a plaintiff can demonstrate discrimination at the summary judgment stage as to "but for" claims through circumstantial evidence including that a reasonable jury may disbelieve the employer's proffered reason for termination); *Paasewe v. Action Group, Inc.*, 530 Fed. Appx. 412 (6th Cir. 2013)(Reversing grant of summary judgment as to Title VII retaliation claim explaining that a plaintiff's burden to establish a *prima facie* case is "minimal" and if a reasonable jury could disbelieve rationale asserted by employer for termination, summary judgment is inappropriate); *Candelaria v. Treasure Island, LLC*, 2014 U.S. App. LEXIS 346 (9th Cir. 2014)(reversing grant of summary judgment for age discrimination plaintiff finding that where a reasonable jury could disbelieve the employer's proffered reason for termination, it could conclude discrimination was a "but for" cause).

Disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class, is the evidence most often used to establish a nexus or pretext. *Iadimarco v. Runyon,* 190 F.3d 151, 162 (3d Cir.1999). For example, a company's failure to follow its own policy with respect to other similarly situated individuals can constitute pretext. *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005).

The timing, antagonistic conduct, and blatantly disparate treatment of Ms. Cacciola establishes that Defendant's reasons for her termination are pretextual. Ms. Cacciola hereby relies on her Statement of Facts at ¶ 77-147 for evidence of pretext.

Thus, Ms. Cacciola has established her retaliation claim and, as a result, Defendant's Motion regarding this claim should be denied as well.

## V. **CONCLUSION**

Based on the foregoing analysis, Ms. Cacciola respectfully requests that this Court deny Defendant's Motion for Summary Judgment in its entirety.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Jeremy M. Cerutti*
Jeremy M. Cerutti, Esq.
3331 Street Road
Two Greenwood Square; Suite 128
Bensalem, PA 19020
215-639-0801
Attorney for Plaintiff

Date: February 26, 2014

29

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUDY CACCIOLA | : |
| Plaintiff, | : |
| | : |
| v. | :     CIVIL ACTION |
| | :     CASE NO.: 13-0381 |
| WORK N GEAR, LLC. | : |
| Defendant. | : |
| | : |

### CERTIFICATE OF SERVICE

I certify on the date set forth below that I provided Plaintiff's Response in Opposition to

Defendant's Motion for Summary Judgment to Defendant at the following address via ECF:

Michael G. Donovan, Esq.
Brian H. Lamkin, Esq.
Manchel & Brennan, P.C.
199 Wells Avenue, Suite 301
Newton, MA 02459
and
Carolyn A. Pellegrini, Esq.
Montgomery McCracken Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA 19109

*/s/ Jeremy M. Cerutti*
Jeremy M. Cerutti, Esq.

Dated: February 26, 2014